**SO ORDERED**



WENDELEN L. LIPP
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Claud Anderson, | : | Case No.: 15-18781-WIL |
| | : | Chapter 7 |
| Debtor. | : | |
| | : | |
| The Harbor Bank of Maryland, | : | |
| | : | |
| Plaintiff, | : | Consolidated Adversary Proceeding |
| v. | : | No.: 15-00685 |
| | : | |
| Claud Anderson, | : | Original Adversary Proceeding |
| | : | No.: 16-0002 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION IN SUPPORT OF
## ORDER GRANTING MOTION FOR PROTECTIVE ORDER

Before the Court are The Harbor Bank of Maryland's Emergency Motion to Quash

Subpoena and Motion for Protective Order and the Debtor's Opposition thereto.  On June 1,

2016, the Court held a telephonic hearing during which both parties agreed that the Motion to

Quash the Subpoena was moot because the Debtor temporarily withdrew his subpoena of Joseph

Haskins, who is the President and Chief Executive Officer of Harbor Bank.  The Court then

considered the Motion for Protective Order, which sought to shield Mr. Haskins from being

1

deposed, and the Court took the matter under advisement to determine whether the issues that the Debtor sought to depose Mr. Haskins about had been previously decided by the Circuit Court for Dorchester County when it entered a confessed judgment in favor of Harbor Bank. The Court instructed the parties to submit argument as well as pleadings and rulings from the Circuit Court for Dorchester County. For the following reasons, the Motion for Protective Order is granted.

## I.      Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding as defined by 28 U.S.C. § 157(b).

## II.      Factual Background[1]

The Debtor is the sole owner and President of Waterland Fisheries, Inc. ("Waterland"), which was an indoor aquaculture center that produced various types of live fish. On or about June 27, 2008, Harbor Bank extended a commercial loan to Waterland in the amount of $750,000 (the "Loan"). Later, the Debtor executed and delivered to Harbor Bank a Consolidated, Amended Promissory Note (the "Note"), dated July 25, 2013 in the principal amount of $1,049,365.45, which was personally guaranteed by the Debtor. The indebtedness owed under the Note is secured by a first-priority duly perfected Deed of Trust in real property known as 299 Nealson Street, Hurlock, Maryland 21643 (the "Property").

Pursuant to the Loan, Waterland was required to obtain insurance coverage for any property damage that may occur on the Property, in which Harbor Bank was to be named as mortgagee, loss payee, and additional insured. In December of 2012, Waterland experienced a severe roof collapse, which led to extensive interior and exterior damage of the Property.

---

[1] The Factual Background is derived from the undisputed facts in Harbor Bank's Complaint Objecting to Discharge and Debtor's Answer to Complaint Objecting to Discharge of Debts.

2

Waterland submitted a claim to its insurer, the Selective Insurance Company of America and/or Selective Way Insurance Company ("Selective"), who denied the claim. Waterland subsequently filed a lawsuit against Selective in the United States District Court for the District of Maryland, which was resolved through a settlement agreement, in which Selective agreed to pay Waterland $800,000 (the "Settlement Proceeds").

On June 22, 2015, Debtor filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code (hereafter, the "Bankruptcy Code"). Harbor Bank commenced the above-captioned adversary proceeding on January 2, 2016, objecting to Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and seeking a declaration that the debt owed to Harbor Bank is non-dischargeable under Sections 523(a)(4) and (a)(6) of the Bankruptcy Code.[2] The underlying crux of each count is that the Debtor improperly caused and/or permitted the Settlement Proceeds to be transferred to Debtor's wife.

### III. Discovery Dispute

On May 20, 2016, Harbor Bank filed a letter to this Court, explaining that the Debtor was requesting to depose Harbor Bank's corporate designee and three officers of Harbor Bank: Joseph Haskins, Carla Nealy, and Stanley Arnold. Although Harbor Bank did not object to the depositions of Harbor Bank's corporate designee, Ms. Nealy, or Mr. Arnold, Harbor Bank stated that a deposition of Mr. Haskins was not appropriate given his lack of involvement in the matter. On May 23, 2016, the Debtor filed a response to Harbor Bank's letter and argued that Plaintiff's refusal to make Mr. Haskins available was unreasonable because Mr. Haskins presided over a restructuring meeting between Harbor Bank and the Debtor, at which Mr. Haskins made suggestions concerning the operation of Waterland's facility and was made aware that $500,000

---

[2] The State of Maryland, Department of Commerce and the Maryland Agriculture & Resource-Based Industry Development Corporation have also sued the Debtor based on related allegations.

of Waterland's live fish inventory was at risk.

On May 26, 2015, Harbor Bank filed an Emergency Motion to Quash Subpoena and Motion for Protective Order (the "Motion"), in which Harbor Bank explained that Mr. Haskins' involvement was limited to two meetings between Harbor Bank and Waterland, attended by both Ms. Nealy and Mr. Arnold. Additionally, Harbor Bank sought a protective order to prevent Mr. Haskins from being deposed because it would be unduly burdensome due to Mr. Haskins' significant and extensive day-to-day obligations as President and Chief Executive Officer of Harbor Bank. On May 27, 2016, Debtor filed a Notice of Withdrawal of Subpoena Issued to Joseph Haskins, but stated that the notice was subject to the issuance of a separate subpoena for a future date.[3] On May 31, 2016 the Debtor filed a Supplemental Opposition to the Emergency Motion to Quash Subpoena and Motion for Protective Order, reiterating that Mr. Haskins was made personally aware of Waterland's imminent loss of $500,000 in live fish inventory and that Debtor wanted to depose Mr. Haskins about Harbor Bank's failure to mitigate damages.[4]

The Court held a telephonic hearing on June 1, 2016 to consider the Motion as well as Debtor's Opposition thereto. Both parties agreed that the only issue to be resolved was Harbor Bank's request for a protective order. At the hearing, the Debtor explained that he wanted to depose Mr. Haskins because he argued he was entitled to a setoff for any judgment entered because of the failure of Harbor Bank to mitigate damages.[5] Harbor Bank then stated that the underlying debt was not at issue because a confessed judgment was entered by the Circuit Court

---

[3] On May 27, 2016, the Debtor also filed an Opposition to the Emergency Motion to Quash Subpoena and Motion for Protective Order, arguing that the issues presented were now moot due to the Debtor's withdrawal of the subpoena. However, at the telephonic hearing held on June 1, 2016, both parties agreed that the issue of whether Mr. Haskins was entitled to a protective order still needed to be resolved.

[4] In the Supplemental Opposition, Debtor also noted that Mr. Haskins personally directed Dr. Anderson concerning actions that Harbor wanted taken to sell Waterland.

[5] At the hearing, Debtor's counsel stated, "…I think the point you raised about the setoff is what we're focusing on."

for Dorchester County (the "Circuit Court") and the arguments that Waterland failed to mitigate damages had already been dealt with in that proceeding. The Court took the matter under advisement and asked the parties to submit argument as well as the pleadings and rulings from the Circuit Court to determine whether the issue of Harbor Bank's failure to mitigate damages was *res judicata*, because if so, the primary reason the Debtor sought to depose Mr. Haskins would be irrelevant to the instant proceeding.

On the same day of the telephonic hearing, Harbor Bank submitted a Supplement to [the] Motion for Protective Order, which contained pleadings from the Circuit Court. Harbor Bank argued that the Debtor had already raised the issue that he was entitled to a setoff based on Harbor Bank's failure to mitigate damages in Debtor's Motion to Vacate the December 5, 2014 [Confessed Judgment] (the "Motion to Vacate"), which was denied by the Circuit Court. Later, on June 27, 2016, the Debtor submitted an Opposition to [the] Support Document Filed by Harbor Bank, and attached the transcript from the hearing held by the Circuit Court on May 20, 2015 on the Debtor's Motion to Vacate. The Debtor then conceded the following:

> The upshot of the previous Dorchester County rulings is that Dr. Anderson has waived any claim for a setoff arising "as of the date of the guarantee," July 15, 2013, and that Harbor had no duty to preserve Waterland's collateral, namely the $500,000.00 worth of live fish that perished.

However, the Debtor stated they were actually seeking to depose Mr. Haskins regarding the following:

> The issues that Dr. Anderson seeks to examine Mr. Haskin's concerning are why after personally instructing Dr. Anderson to locate a qualified buyer and speaking with that buyer, Mr. Walter Edwards, did Harbor refuse to go forward with Mr. Edwards, but instead sold Waterland's real estate to a lower paying purchaser at foreclosure.

To support this argument, the Debtor submitted an affidavit under the penalties of perjury, which stated that Mr. Haskins instructed the Debtor to pursue a private sale of the Property at an August

5

2014 restructuring meeting attended by both Ms. Nealy and Mr. Arnold. (Exh. C to Opp'n to Supp. Doc.). The Debtor claims that after working diligently to secure a purchaser for the Property, restaurant owner Walter Edwards offered to purchase the Property for $800,000 and placed $75,000 in escrow. (Exh. C to Opp'n to Supp. Doc.). After discussions between Mr. Haskins and Mr. Edwards, the Debtor states that Harbor Bank failed to pursue Mr. Edwards' offer and allowed the Property to be sold for $400,000 at foreclosure. (Exh. C to Opp'n to Supp. Doc.). Therefore, Debtor argues he has a $400,000 recoupment claim against Harbor Bank, representing the difference between the amount offered by Mr. Edwards and the amount the Property sold for. (Exh. C to Opp'n to Supp. Doc.). In addition to the Debtor's affidavit, the Debtor submitted e-mail correspondence from what appears to be Mr. Edwards' attorney, which states that Mr. Edwards was interested in purchasing the Property and had proposed an offer of $800,000 to all of Waterland's creditors. (Exh. C to Opp'n to Supp. Doc.). After being asked how much Mr. Edwards was willing to pay to Harbor Bank, Mr. Edwards' counsel explained that Harbor Bank would receive $300,000. (Exh. C to Opp'n to Supp. Doc.). Moreover, when Mr. Edwards inquired as to why the contract required him to pay closing costs, Harbor Bank told him that the terms were non-negotiable, and Mr. Edwards decided not to proceed with the sale. (Exh. C to Opp'n to Supp. Doc.).

In response to Debtor's Opposition to the Support Document, Harbor Bank filed a Second Supplement to the Motion for Protective Order, arguing that the Debtor's contention that he is entitled to a $400,000 setoff due to Harbor Bank's refusal to accept Mr. Edwards' offer is directly contradicted by the correspondence sent by Mr. Edwards' counsel, which notes that Harbor Bank would have only received $300,000 of the $800,000 offer whereas Harbor Bank received $400,000 at foreclosure. Finally, in the Debtor's Opposition to the Second Supplement

6

to Motion for Protective Order, the Debtor argues that Mr. Edwards' offer was not limited to $300,000 as that amount was only an opening proposal. Additionally, the Debtor mentions he wants to depose Mr. Haskins about threats he allegedly directed his staff to levy against the Debtor after Harbor Bank discovered they did not have a perfected security interest in the Settlement Proceeds.

## IV. <u>Analysis</u>

As an initial matter, the original reason the Court took the matter under advisement – to determine whether Harbor Bank's failure to mitigate damages after being informed of an imminent loss of inventory is *res judicata* – is not at issue anymore as the Debtor has conceded that the Circuit Court already ruled on that issue. The Court therefore needs to determine whether Harbor Bank is entitled to a protective order, taking into consideration the two primary reasons the Debtor seeks to depose Mr. Haskins: (1) Mr. Haskins' involvement in failing to pursue Mr. Edwards' offer to buy Waterland's real estate; and (2) Mr. Haskins' alleged threats he directed his staff to make towards the Debtor after Harbor Bank discovered they did not have a perfected security interest in the Settlement Proceeds.[6]

Generally, "[u]nless otherwise permitted by court order, the scope of discovery is as follows: [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

---

[6] For the purposes of the pending Motion for Protective Order, the Court does not have to take a position on whether or not Harbor Bank has a properly perfected security interest in the Settlement Proceeds.

However, even if the information is relevant, the simple fact that requested information is discoverable does not mean that discovery must be had. *Nicholas v.Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). "On its own initiative or in response to a motion for protective order under Rule 26(c), a …court may limit 'the frequency or extent of use of the discovery methods otherwise permitted' under the Federal Rules of Civil Procedure if it concludes that '(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.' *Id.* (internal citation omitted). Moreover, Fed. R. Civ. P. 26(c) provides, in relevant part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery

Fed. R. Civ. P. (26)(c)(1). The standard for issuance of a protective order is high. *Finkle v. Howard Cty., Md.*, No. SAG-13-3236, 2014 WL 6835628, at *1 (D. Md. Dec. 2, 2014) (internal citation omitted). The party moving for a protective order bears the burden of establishing good cause. *Id.* (internal citation omitted). Trial courts have broad discretion to decide when a protective order should be issued and what degree of protection is required. *Id.* (internal citation omitted).

Here, Harbor Bank makes a compelling argument that Mr. Haskins should not be deposed primarily due to the lack of relevancy of Mr. Haskins' testimony to the proceeding at hand, his limited involvement in Harbor Bank's relationship with Waterland, and the duplicative nature of any testimony with that of the corporate designee, Mr. Arnold, and Ms. Nealy.

Although the Fourth Circuit has "never discussed, much less adopted, an apex deposition rule[,]" – a rule that protects busy executives from being subject to depositions where they lack unique or personal knowledge of relevant matters – this Court can still consider the burden imposed by taking a deposition of Mr. Haskins. *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125–26 (D. Md. 2009); Fed. R. Civ. P. 26(c)(1). Given Mr. Haskins' extensive responsibilities at Harbor Bank and his limited involvement in Harbor Bank's relationship with Waterland, it would be an undue burden for Mr. Haskins to testify if he does not have unique knowledge of relevant matters. Therefore, the Court must determine whether Mr. Haskins has unique knowledge and the relevancy of Debtor's justifications for deposing Mr. Haskins.

With respect to Debtor's desire to depose Mr. Haskins to question him about his failure to pursue Mr. Edwards' offer to purchase Waterland's real estate for $800,000, this line of questioning has a tenuous relationship to the instant adversary proceeding. Here, despite the fact that all of the causes of action plead focus on the transfer of the Settlement Proceeds, the Debtor argues that he is entitled to a setoff for Harbor Bank's failure to accept a higher offer for Waterland's real estate. However, the Debtor has not produced any authority, nor is this Court aware of any, that demonstrates that Harbor Bank's refusal of Mr. Edwards' offer would entitle the Debtor to a setoff. Indeed, Maryland law provides, in relevant part:

> (a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

> (b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

Md. Code Ann., Com. Law § 9-610. The Debtor makes no allegation that the disposition of the

9

Property was conducted in a commercially unreasonable manner, but rather asserts that Harbor

Bank unreasonably rejected a higher price for the Property. However, this assertion does not

demonstrate that the sale was conducted in a commercially unreasonable manner. *See Harris v.*

*Bower*, 295 A.2d 870, 874 (Md. 1972) (internal citation and quotation marks omitted) ("The fact

that a better price could have been obtained by a sale at a different time or in a different method

from that selected by the secured party is not of itself sufficient to establish that the sale was not

made in a commercially reasonable manner.")

      Moreover, as noted by Harbor Bank, the correspondence submitted by the Debtor

contradicts the notion that Harbor Bank would have received more money had they accepted Mr.

Edwards' offer. As explained in the correspondence from Mr. Edwards' attorney, Mr. Edwards

stated that Harbor Bank would have only received $300,000 of his $800,000 offer. Additionally,

it appears that Mr. Edwards is the one who walked away from the deal after he took issue with a

provision requiring the buyer to pay all closing costs. Accordingly, it is clear that Debtor's

inquiry into the sale of the Property is irrelevant to the instant proceeding.

      In addition to the irrelevancy of Debtor's inquiry into the sale of Waterland's real estate,

the Debtor has not provided a satisfactory response to Harbor Bank's contention that any

discovery regarding this matter would be duplicative. Harbor Bank has agreed to make Ms.

Nealy, Mr. Arnold, and a corporate designee available for depositions. In his own affidavit, the

Debtor explains that both Ms. Nealy and Mr. Arnold were present at the August 2014

restructuring meeting, in which Mr. Haskins allegedly directed the Debtor to pursue a private

sale. Accordingly, a deposition of Mr. Haskins would be unnecessarily duplicative given the fact

that Harbor Bank has made other officers available to testify. *See E.E.O.C. v. Freeman*, No.

RWT-09-2573, 2012 WL 2370122, at *2 (D. Md. June 21, 2012) (internal citation and quotation

marks omitted) ("If further depositions on the same issues would yield information already provided in prior depositions, then those further depositions should be excluded as unreasonably cumulative or duplicative.")

Debtor also asserts that he seeks to depose Mr. Haskins about alleged threats he directed his staff to make towards the Debtor after Harbor Bank discovered they did not have a perfected security interest in the Settlement Proceeds. This line of questioning is irrelevant to the instant adversary proceeding. Moreover, the Debtor's inquiry into this matter further provides cause for granting a protective order here because it demonstrates the ephemeral nature of Debtor's discovery requests. At the hearing held on June 1, 2016, the Debtor emphasized that he wanted to depose Mr. Haskins regarding the imminent loss of live fish inventory. When the Debtor submitted the Opposition to [the] Support Document Filed by Harbor Bank, the Debtor conceded that the Circuit Court had already dealt with the issue, but then emphasized the desire to question Mr. Haskins about Mr. Edwards' offer to purchase the Property. Finally, in Debtor's Opposition to the Second Supplement to Motion for Protective Order, the Debtor explains he wants to depose Mr. Haskins regarding the alleged threats he directed his staff to make towards him. At best, the moving target of inquiries evidences his intent to annoy Mr. Haskins, and provides further cause for issuing a protective order. Based on these facts, the Court finds that Harbor Bank is entitled to a protective order prohibiting Mr. Haskins from being deposed.

**V.    <u>Conclusion</u>**

Harbor Bank has demonstrated good cause for issuance of a protective order. The lack of relevance and transitory nature of Debtor's proposed inquiries establishes good cause for issuing a protective order in this instance. Moreover, Mr. Haskins' extensive duties as President and C.E.O. demonstrate that it would be an undue burden for him to participate in a deposition that

appears to be directed at harassing or annoying him rather than obtaining relevant information.

An order consistent with this memorandum will be entered contemporaneously herewith.